IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. |
| v. | 1:23-CR-123-SEG-JSA |
| ROYKELL HOLDER | |

### MOTION TO DISMISS INDICTMENT AS VIOLATIVE OF THE SECOND AMENDMENT

Mr. Holder moves this Court pursuant to Federal Rule of Criminal Procedure 12(b)(1) to dismiss the indictment due to the unconstitutionality of 18 U.S.C. § 922(n) in light of *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In support of this motion, Mr. Holder shows the Court the following: 1) the plain text of the Second Amendment covers Mr. Holder's charged conduct; and 2) the government is unlikely to meet its burden of showing that completely disarming individuals who are under indictment comports with "this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

### BACKGROUND

The government originally charged Mr. Holder on April 19, 2023, in a two-count indictment with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) and possession of a firearm while under felony indictment in violation of 18 U.S.C. § 922(n). (Doc. 1). On May 16, 2023, the government

1

superseded the indictment in order to change the language in Count Two to mirror the language of 18 U.S.C. § 922(n) which prohibits the *receipt* of firearms by individuals under felony indictment. (Doc. 14).

Under the new analytical framework established by the Supreme Court in *Bruen*, 26 U.S.C. § 5861(d) and 18 U.S.C. § 922(n) clearly address conduct protected by the Second Amendment, and the government cannot meet its burden of showing that these statutes are consistent with the nation's historical tradition of firearm regulation. Accordingly, both counts of the indictment should be dismissed because they do not pass constitutional muster. Fed.R.Crim.P. 12(b)(1).

## ARGUMENT

### I. The Second Amendment's Plain Text Covers Mr. Holder's Charged Conduct

In *Bruen*, the United States Supreme Court established the following test for assessing the constitutionality of firearms regulations:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, *the government* must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2126 (emphasis added); *see also Nat'l Rifle Assoc. v. Bondi*, 61 F.4th 1317, 1321-1332 (11th Cir. 2023) (applying *Bruen*'s two-part test) (reh'g *en banc* granted, 72 F.4th 1346 (11th Cir. 2023)).  Accordingly, the first step is to determine whether the plain text of the Second Amendment covers Mr. Holder and his charged conduct.  Here it does.

The text of the Second Amendment states that "the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.  The Supreme Court has made it clear that the use of "the people" in the Second Amendment, like all other provisions in the Constitution where the phrase is used, "unambiguously refers to all members of the political community, not an unspecified subset."  *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008); s*ee also United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (finding that "the people" includes persons who are part of the national community).  Mr. Holder, a life-long citizen of the United States, is undoubtedly part of "the people."

The government is likely to argue that the Second Amendment's protections are limited to "law-abiding" people, and as such, Mr. Holder is excluded from the group because he was accused of committing a felony offense.  This argument is unavailing for two reasons.

First, an individual's criminal history—or history of merely being accused of a crime—cannot remove them from "the people" protected by the Second

3

Amendment. The Eleventh Circuit has emphasized that individuals with past convictions, even "dangerous felons," are "indisputably part of 'the people.'" *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022), (*abrogated on other grounds by* Bruen). If those with felony convictions are considered part of "the people," then those merely accused of a felony offense must be as well.

Second, the phrase "law-abiding" is neither part of the Second Amendment nor part of a binding holding. Under *Bruen*, this Court is required to consider the plain text of the Second Amendment when assessing challenges to firearm statutes. "Law-abiding" is nowhere to be seen in the plain text of the Second Amendment. And although past cases have used the phrase, *see, e.g.*, *Heller* 554 U.S. at 635, it has only been used in dicta. *See Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 101 (3d Cir. 2023) (explaining that since the criminal histories of the plaintiffs in earlier Supreme Court cases were not at issue, references to "law-abiding, responsible citizens" were dicta). Mr. Holder is indisputably part of "the people" protected by the Second Amendment.

Similarly, the plain text of the Second Amendment covers Mr. Holder's charged conduct. Here the government alleges that Mr. Holder possessed a firearm—a Diamondback Firearms LLC, Model DB9R, serial number DB9M02752—that was a rifle with a barrel length of 4.5 inches. (Doc. 14). The government further alleges that the firearm was not registered to the defendant in

4

the National Firearms Registration and Transfer Record. *Id.* The firearm trace summary provided by the government in discovery indicates that the item was sold as a pistol rather than a rifle. (Attachment A). The government further provided a report from ATF Special Agent Jason Dykes in which Agent Dykes claims that the charged item meets the definition of a "firearm" as outlined in 18 U.S.C. § 921(a)(3)(A) and (B) and a "short-barreled rifle" as defined in 18 U.S.C. § 92l(a)(8). (Attachment B at 4). While it is not entirely clear from Agent Dykes report, the government will presumably argue that the addition of the "folding stock adaptor and a shoulder stock" mentioned in the report rendered the item a "rifle."

Several district courts have found that the conduct regulated by 26 U.S.C. § 5861(d) falls outside of the Second Amendment.[1] Each of these cases point to the

---

[1] *See, e.g., United States v. Saleem*, No. 3:21-cr-00086-FDW-DSC, 2023 U.S. Dist. LEXIS 34566, 2023 WL 2334417, at *8 (W.D.N.C. Mar. 2, 2023) (finding Section 5861(d) constitutional because short-barreled shotguns are not protected by the Second Amendment); *United States v. Rush*, No. 22-cr-40008-JPG, 2023 U.S. Dist. LEXIS 12948, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023) (same); *United States v. Holton*, No. 3:21-CR-0482-B, 2022 U.S. Dist. LEXIS 200327, 2022 WL 16701935, at *3 (N.D. Tex. Nov. 3, 2022) (holding that Sections 5861(d) and 5861(h) are constitutional because the National Firearms Act regulates dangerous and unusual weapons and thus does not regulate protected conduct); *United States v. Hoover*, No. 3:21-cr-22(S3)-MMH-MCR, 2022 U.S. Dist. LEXIS 190258, 2022 WL 10524008, at *6-9 (M.D. Fla. Oct. 18, 2022) (same, as to Section 5861(d)'s regulation of machineguns); *see also United States v. Fencl*, No. 21-CR-3101 JLS, 2022 U.S. Dist. LEXIS 220973, 2022 WL 17486363, at *2-3 (S.D. Cal. Dec. 7, 2022) (holding the requirements under Title 18, United States Code, Section 3142(c)(1)(B)(viii) of

Supreme Court's assertion in *District of Columbia v. Heller*, that the protections of the Second Amendment do not extend to firearms that are "dangerous or unusual." *Id.* However, the item charged in Count One is unlike many of the other items prohibited by 26 U.S.C. § 5861(d) (e.g. machine guns, silencers, mines, grenade, etc.). The government is unlikely to be able to show that the alleged short-barrel rifle is of the dangerous or unusual nature that would render it outside of the Second Amendment's protection.[2]

Section 922(n) provides, in relevant part, "It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to . . . receive any firearm or ammunition." 18 U.S.C. Section 922(n). Mr. Holder is charged with willfully receiving firearms. (Doc. 14). Plainly, receiving firearms falls under the Second Amendment's protection of the right to "keep and bear arms." *See Heller*, 554 U.S. at 592 (finding that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation"); *see also United States v. Quiroz*, 629 F. Supp. 3d 511, 517 (W.D. Tex. 2022) (finding that "without a doubt" the Second Amendment covers the receipt of firearms).

---

the Bail Reform Act of 1984 for Section 5861(d) violations concerning unregistered short-barreled rifles and silencers regulate unprotected conduct).

[2] It should be noted that Agent Dykes determined that the alleged short-barrel rifle was missing a firing pin and firing pin spring. (Attachment B at 3).

For these reasons, the Second Amendment's plain text covers both Mr. Holder and the charged conduct.

II. **The Government is Unlikely to Satisfy Its Burden of Demonstrating that 26 U.S.C. § 5861(d) and 18 U.S.C. § 922(n) are Part of the Nation's Historical Tradition**

Because the Second Amendment's plain text covers Mr. Holder's conduct, the burden is now on "the government [to] affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127; *see also, e.g.*, *id.* at 2135 (explaining that "the burden falls on [the government] to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation"); *see, e.g.*, *Bondi*, 61 F.4th at 1325 (placing the burden on Florida to point to historical sources justifying its firearm regulation).

The Supreme Court went on to clarify that burden:

> [W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.

*Bruen*, 142 S. Ct. at 2131 (emphases added). On the other hand, in "other cases implicating unprecedented societal concerns or dramatic technological changes,"

or "modern regulations that were unimaginable at the founding," *id.* at 2132, the inquiry "will often involve reasoning by analogy." *Id.*

26 U.S.C. § 5861(d) and 18 U.S.C. § 922(n) address "general societal problem[s] that [have] persisted since the 18th century." The Founding colonies could have prohibited all individuals from placing a shoulder stock on a firearm that was otherwise a rifle. Likewise, they could have prohibited individuals who have been charged with a crime from receiving and possessing firearms while under indictment. The government thus bears the significant burden of pointing to Founding-era laws that completely prevented individuals under indictment from receiving firearms. And as other courts have found when evaluating similar challenges to § 922(n), the government will be unlikely to do so. *See United States v. Quiroz*, 629 F. Supp. 3d 511 (W.D. Tex. 2022) (dismissing a § 922(n) charge after finding the statute unconstitutional under *Bruen*); *United States v. Stambaugh*, 641 F. Supp. 3d 1185 (W.D. Okla. 2022) (same); *United States v. Hicks*, No. W:21-CR-00060-ADA, 2023 WL 164170 (W.D. Tex. Jan. 9, 2023) (same).

Because the government has not had the opportunity to satisfy its burden in this case, this brief cannot comment on whether the government has met its burden. Mr. Holder reserves the right to argue how the government has failed to meet its heavy burden in a reply brief.

## CONCLUSION

For these reasons, Mr. Holder respectfully requests that this Court grant his motion to dismiss the indictment.

Respectfully Submitted, this 25th day of September, 2023.

>*/s/ Caitlyn Wade*
>CAITLYN WADE
>GEORGIA BAR NO. 259114
>
>*/s/ Takiya J. Wheeler*
>TAKIYA J. WHEELER
>GEORGIA BAR NO. 761058
>
>ATTORNEYS FOR MR. ROYKELL HOLDER

Federal Defender Program, Inc.
Centennial Tower, Suite 1500
101 Marietta Street, N.W.
Atlanta, Georgia 30303
(404) 688-7530; Fax: (404) 688-0768
Rebecca_Shepard@fd.org