IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | CRIMINAL NO. |
| ROYKELL HOLDER, | : | 1:23-CR-123-SEG-JSA |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

Defendant engaged in a shooting in a shopping mall and then fled the scene. After an investigation led officers to an apartment where Defendant was located, the officers obtained a search warrant from a local county Magistrate and found evidence including guns. Defendant has filed a Motion to Suppress [30] the fruits of that search pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Specifically, Defendant argues that the attesting officer was untruthful in his affidavit supporting the search warrant, and that a materially true affidavit would have failed to establish probable cause to justify the search. As explained below, the Court **RECOMMENDS** that the Motion be **DENIED**.

**I.    DISCUSSION**

In *Franks*, 438 U.S. at 154, the Supreme Court explained that false statements made in support of a search warrant can require suppression of evidence

1

discovered as a result. But to obtain such relief, a Defendant bears the burden to show two elements. First, the Defendant must allege and offer proof of a "deliberate falsehood or . . . reckless disregard for the truth," not just "negligence or innocent mistake . . . ." *Franks*, 438 U.S. at 171. Second, even in cases of deliberate falsehoods, suppression is not warranted unless "the remaining content is insufficient" to support the issuance of the warrant. *Id.* 171-72. Suppression can result not just from the inclusion of affirmative false statements, but also from the intentional or reckless omission of facts. *See United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009). However, "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997).

Because there remains "a presumption of validity with respect to [an] affidavit supporting [a] search warrant," *Franks*, 438 U.S. at 171, the Court must first find, before any hearing, that a defendant has made a substantial preliminary showing based on an offer of proof that would meet the above elements, including that any statement and/or omission were necessary to the finding of probable cause. *See, e.g., United States v. Sledge*, No. 7:22-CR-270, 2023 WL 3874336, *2 (N.D. Ala. May 8, 2023).

On January 6, 2023, Officer R.C. Barrett of the Dunwoody Police Department applied for and received a search warrant for an apartment in Doraville, Georgia. The affidavit stated:

> On 01/06/2023 at approximately 1648 hours, the Dunwoody Police Department was dispatched to 4400 Ashford Dunwoody Rd, Dunwoody, GA 30346, Perimeter Mall, in reference to a shots fired call. Once on scene uniform patrol officers started to enter the building and were directed by people fleeing to the incident location.
>
> Uniform Patrol Officers located a black male on the floor with a gunshot to the right side. While officers were attending to the victim another officer went to mall security office to view surveillance footage. The officer was able to get a description of the suspects and pass it along to other officers. Surveillance video was able to provide footage of the incident and of the suspects getting in a vehicle and leaving the scene.
>
> When checking the license plate readers in the area officers were able to obtain a tag for the suspect vehicle. As the vehicle tag and description was being sent out to responding units, Dunwoody PD was advised that Dekalb PD and Fire were responding to a person shot call. The address, 319 Pleasantdale Crossing, they were responding to matched the listed address on the suspect vehicle registration.
>
> Once officers arrived on scene at the 319 Pleasantdale Crossing they located a black male with a gunshot wound to his hand. The suspect vehicle was also located in the parking lot near the suspects apartment. The suspects mother advised that her son had been shot at the mall. Officers on scene had a picture of the suspect and the person shot in the hand matched the suspect picture.

The warrant application asserted that the above facts showed probable cause of a violation of O.C.G.A. 16-11-108, that is, possession of a firearm during commission of another offense. The warrant included the word "Assault,"

suggesting that the "other offense" upon which the possession charge was predicated was assault or aggravated assault. Thus, Officer Barrett applied for and received a warrant to search the apartment listed above "for any firearms, ammunition, clothing that matches suspects clothing, blood evidence, any items that belong to [the victim], and any other evidence related to this crime." [30-1] at 1-2.[1]

Defendant's Motion to Suppress is based on surveillance footage of the shooting and body camera footage taken from some officers during the initial response to the emergency call at the Doraville apartment. Defendant has submitted these files on a thumb drive for filing in support of his motion, marked as Defendant's Exhibit 1.

According to Defendant, a review of the surveillance footage of the shooting shows that the Defendant was acting in self defense or in defense of another and therefore is immune from prosecution and/or innocent of assault or any other shooting-related offense pursuant to O.C.G.A. § 16-3-21. Because Defendant was immune or innocent of any assault, he argues, it follows that the issuing Magistrate

---

[1] Search warrants may be issued by state judicial officers referred to as "Magistrates," under Georgia law. *See* O.C.G.A. § 17-4-40. The warrant in this case solely involved such local courts, and not any federal court. To eliminate any confusion, the undersigned holds the different title under federal law of "U.S. Magistrate Judge," *see* 28 U.S. § 631, and neither the undersigned nor any other U.S. Magistrate Judge had any involvement in the issuance of this warrant.

would not have issued this warrant had he or she been aware of the omitted facts, because the possession charge upon which the warrant was based required an underlying assault. Further, Defendant argues that a review of bodycam footage from the initial law enforcement response reveals facts, omitted from the warrant application, that contradicted any claim that the specific anticipated evidence listed in the warrant (including clothing and any gun) would be found at the premises, and revealed undisclosed, ulterior motives for the search.

The Court addresses these different points separately below.

**A.** *Omitted Facts Allegedly Suggesting Self-Defense*

The Defendant's motion proffered that the security footage of the shooting demonstrated that the shooter (the Defendant) was not the aggressor and was acting in self defense. Therefore, Defendant argues that he is immune from and/or innocent of the offense identified on the warrant, that is, possession of a firearm in furtherance of an assault in violation of O.C.G.A. 16-11-108, and that no search warrant would have issued had the Magistrate been advised of the contents of the footage.

Under Georgia's version of a so-called "Stand Your Ground" law, a person is generally immune from prosecution from using deadly force that he or she reasonably believes is necessary to prevent death or great bodily injury to him or herself or another, except in circumstances not applicable here. *See* O.C.G.A. § 16-

3-21. Immunity from prosecution under this provision is an affirmative defense for which the defendant bears the burden to establish in a pretrial proceeding. *See, e.g., Jennings v. State of Georgia*, 869 S.E.2d 93, 98 (Ct. App. Ga. 2022). Even if immunity is not granted pretrial, the prosecution bears the burden at trial to disprove a claim of self-defense beyond a reasonable doubt. *Id.* However, at trial, self-defense remains an affirmative defense that must first be raised by the Defendant, who bears an initial burden of production and who must "admit the crime before he can raise such defense…." *Ransom v. State of Georgia*, 734 S.E.2d 761, 766 (Ct. App. Ga. 2012) (*quoting Hicks v. State*, 695 S.E.2d 195 (Ct. App. Ga. 2010)); *see also Lightning v. State*, 676 S.E.2d 780 (Ct. App. Ga. 2009) (a defendant must admit the act or he is not entitled to a charge on justification).

Defendant's original motion papers are conclusory, as they offer only the conclusion proposed to be drawn from a review of the footage (that is, that he was acting in self defense) and no description of the specific facts supporting that conclusion. Nevertheless, the undersigned allowed Defendant to submit a copy of the footage itself for the Court's review. The Defendant thus submitted a "thumb drive," marked as Defense Exhibit 1, on December 18, 2023, which includes the file named "25_20230106t212956_20230106t220000" (which is the surveillance

6

footage) along with a media file player necessary to effectively review the footage named "ACVS.Enterprise.Player."[2]

A review of the video shows, in summary, at approximately the 17-18 minute mark: that the Defendant and several companions passed by the alleged victim in a hallway in the mall; that the victim appeared to turn around and possibly initiate conversation; that one of Defendant's companions stopped, turned around and responded with a hand in a pocket; and that the victim then walked up to the companion while putting his (the victim's) hand in his own jacket pocket. At that point, the Defendant (wearing a gray sweatshirt) approached and put his own hand under the front of his sweatshirt.

The events that followed occurred quickly and the Court's specific findings required repeated review of the footage in slow motion, and even freeze frame advancing, while also zooming in as much as possible. It appeared (at 17:20-17:22) through such careful review that the victim likely pulled his right hand out of his jacket pocket first, to where his hand was hanging down parallel to his right leg. The Court could not conclude from any normal-speed review of the footage whether the victim was holding anything, but from freezing and zooming the

---

[2] As counsel helpfully pointed out in a subsequent telephone conference with the Court, it is necessary to first launch the "Player" application and then open the video file from within that application. The application allows pausing, zooming, speeding up and slowing down the footage.

footage it appears that an object consistent with a metal gun handle is visible in the victim's hand. While the victim's hand and whatever object he was holding remained at his side and not raised (at 17:22), the Defendant pulled a gun out of his front waistband and shot the victim. A slow, frame-by-frame advance of the footage, shows that the Defendant fired twice (at 17:22 and 17:23). The second flash from the gun occurred while the victim was falling or had already fallen to the ground. The Defendant (while still carrying his gun) and his companions then ran away. The victim fell to the ground and the gun he was apparently holding scattered down the hallway and was later recovered by the officers.

      The following screenshot (at 17:22) shows the moment Defendant (in the gray sweatshirt) pointed his gun at the alleged victim (in blue) while the victim's arm (probably holding a gun) was down by his side:



The following screenshot, less than a second later (also at 17:22) shows the first muzzle blast from Defendant's gun:



The following screenshot, from one second later (17:23), shows the second muzzle blast from Defendant's gun, as the victim had fallen to the floor:



The Court cannot conclude that a more complete description of this footage, or inclusion of these or other screenshots, would have vitiated probable cause to issue the warrant. At the threshold, these omitted facts do not relate to the elements of the offense but rather solely to a potential affirmative defense not yet raised. While officers may not ignore "conclusively established evidence," *Liberto v. Mandeville City*, 2016 WL 5724599, *4 (E.D.La. Sept. 30, 2016), they generally "need not investigate affirmative defenses and the existence of an affirmative defense does not vitiate probable cause where the officers witness seemingly

unlawful conduct." *Rankin v. Bd. of Regents of Univ. Sys. of Ga.*, 732 F. App'x 779, 781–82 (11th Cir. 2018); *United States v. Razo-Quiroz*, 2019 WL 3035556, *12 (E.D.Cal. July 19, 2020) (rejecting *Franks* motion based on omissions of facts that related "at most" to "only an affirmative defense of duress to any charges brought against her and does not negate the existence of a probable cause to search."); *United States v. Barnes*, 126 F. Supp. 3d 735, 745 (E.D. La. 2015) ("Courts routinely reject Franks challenges based on the omission of facts that might have established an affirmative defense.") (citing cases); *United States v. Call*, No. 2:09-CR00079-KJD-RJJ, 2009 WL 6047137, at *7 (D. Nev. Nov. 24, 2009), report and recommendation adopted, No. 209-CR-0079-KJD-RJJ, 2010 WL 932599 (D. Nev. Mar. 11, 2010) (information in support of a potential entrapment affirmative defense was not a material omission to the search warrant affidavit).

The security footage here hardly constitutes conclusive evidence clearly establishing that Defendant acted in self-defense. That the Defendant appears to have shot the victim before the victim raised any gun is at least arguably inconsistent with a claim that such force was necessary. Certainly, that the Defendant appears to have shot a second time after the victim had fallen could be seen as even more unnecessary to any need for defense. Further, the Defendant and

his companions all fled, which is additional evidence at least potentially inconsistent with any claim that he believed he was legally justified in his actions.[3]

A factfinder presented with additional testimony and evidence may ultimately find that Defendant acted in self-defense, or that the Government cannot disprove that defense (if asserted) beyond a reasonable doubt at trial. But, by itself, this footage does not clearly establish any such justification defense and does not vitiate the relatively low standard of probable cause. Thus, the omission of a more complete description of this footage from the affidavit was not necessary to the issuance of the warrant. Defendant has therefore not made a substantial preliminary showing of a *Franks* violation on this issue.

### B. *Omitted Facts Relating To Likelihood Of Evidence To Be Found*

As noted above, the warrant application suggested that evidence was likely to be found at the premises, including firearms and/or ammunition, clothing worn by suspects, blood evidence, and other items. Defendant argues, however, that the officers omitted facts in the warrant application that would have suggested that at least some of those items were, in fact, unlikely to be found in the apartment.

At the threshold, Defendant does not refute that at least some of the specifically referred-to evidence would likely be found at the apartment, including

---

[3] One thing that remains unclear from a review of this footage is when the Defendant was shot in the hand. It is possible that this occurred while the victim was falling after the first shot, but this is not clearly evident from the video alone.

blood evidence and ammunition. Moreover, all of the specifically-identified items were examples not necessarily exclusive to other evidence of the crime that could be found in the residence, including other evidence showing ownership or possession of guns or ammunition (including receipts, photographs, residue, etc). That the Defendant challenges the likelihood that some specifically referred-to items would be found at the apartment does not show that a search would not otherwise have been authorized.

  Defendant's arguments are also insufficient to show that firearms were not present. Defendant points to statements captured on bodycam footage by a few of the many officers who responded to the apartment, speculating that the gun used by the shooter was not likely to be found in the apartment, might still be in the car, or might have been thrown away during flight. The Court cannot find a substantial showing of a *Franks* violation based on such comments.

  This speculation does not appear to have been based on any additional *facts* known to the officers but hidden from the Magistrate. The statement appears to simply be the conjecture of some officers (not necessarily the affiant) that the shooter could have thrown the gun away at any time during this flight. But the warrant application similarly informed the Magistrate that the shooter apparently fled the scene, drove away in a car, and at some later juncture ended up in the apartment to be searched. The Magistrate would have been fully aware that the

fleeing shooter could have tossed his gun away at any time and that there was no guarantee that he brought that gun back to the apartment. Yet the Magistrate still concluded that there was at least probable cause to support the search. This finding would not have been vitiated by disclosure that some of the officers speculated, based on the same facts presented to the Magistrate, that a fleeing suspect *could* have thrown the gun away.

    Regardless, the warrant on its face was not limited to the likelihood that any particular firearm would be in the apartment. The warrant, rather, referenced probable cause to search more generally for "firearms," as well as "ammunition." Even if the shooter had tossed the specific gun used in the incident away before arriving back at the premises (which, again, was merely speculation), the Magistrate was still permitted to infer that someone engaged in this conduct could have other weapons and certainly may have had ammunition stored in his premises.

    Second, the Defendant points to other bodycam footage showing the Defendant being wheeled out of the apartment on a stretcher. This footage may have been taken before the issuance of the warrant, and according to Defendant shows that he was wearing all of the same clothing that he was wearing during the incident. According to the Defendant, this fact would have negated any conclusion

that "clothing that matches suspects clothing" would still be found in the apartment.

The Defendant has a point in this regard, as it appears from the footage that the Defendant was wearing at least the same sweatshirt and generic white undershirt and black pants as depicted in the security footage when he was wheeled out to the ambulance. The Court cannot definitively conclude that the Defendant was wearing all of the same clothing, however, particularly including the distinctive gray and black sneakers that the shooter wore in the mall. And, as the Government points out, the warrant more broadly allowed for a search of the "suspects" clothing, which read in the light most favorable to the validity of the warrant could refer to clothing worn by the other suspects as well.

But even if there was no basis to conclude that the specific clothing depicted on the footage still remained in the apartment, there still remained ample basis to find probable cause that blood evidence, ammunition, "firearms," and other evidence indicating of firearms possession was present would have been present. The reference to clothing was not necessary to show probable cause or obtain the warrant.

### C. *Alleged Ulterior Purpose of the Search*

Finally, Defendant points to other comments captured in body camera footage that at least one officer referred to the Defendant as being a "suspect in an

ATF firearms case," which Defendant relies upon to show an ulterior purpose of the search. In other words, Defendant argues based on this comment that "the officers were not searching the home to get evidence of the shooting at the mall, as stated in the warrant application, but to search for evidence of a completely unrelated crime for which they lacked probable cause to search the home." [47] at 4.

At bottom, the warrant rule requires law enforcement to show probable cause based on truthful facts that a crime was committed and that evidence or contraband of that crime would likely be found at a particular premise. *See, e.g., United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (explaining that officers must produce facts "sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched.") Defendant cites no authority suggesting that the officers must necessarily also disclose all *motivations* for investigating a particular defendant. Indeed, the officers generally have no such obligation. *See United States v. Rangel*, No. 14-CR-00354, 2017 WL 11414370, *5 (C.D.Cal. October 13, 2017) (Officer's ulterior motive for search did not, by itself, satisfy a substantial preliminary showing of a *Franks* violation).

Of course, a secret, unrelated motivation for a search could be relevant to show bad faith with regard to any material false statements or omissions in the warrant application. But it remains that Defendant must first show such material

17

falsities. The existence of an additional law enforcement motivation for an otherwise properly requested and authorized search is not an omitted "fact" and does not by itself constitute a *Franks* violation. Defendant has not shown the existence of material falsities or omissions, and therefore the possibility of an additional undisclosed motivation for the search is not sufficient.

For all these reasons, Defendant has not satisfied his burden to show substantial evidence of a *Franks* violation. The Court is obliged to respect the presumption of validity and not disturb the search warrant issued by the state Magistrate in this case. There is no basis for any further hearing or receipt of evidence and Defendant's Motion to Suppress should be denied.[4]

## II.   CONCLUSION

As explained above, the Motion to Suppress [30] should be **DENIED**.

---

[4] The Court notes that the Government has argued that Defendant has failed to offer evidence of his standing to contest a search of the premises. The Defendant responds that he is entitled to rely on the Government's theory that the evidence found within the premises belonged to the Defendant. Generally, however, a defendant "cannot rely on the Government's position, contention, or theory to establish standing and must instead prove his expectation of privacy as to a particular place." *United States v. Arzate*, No. 1:12-CR-329, 2014 WL 1256075, *9 (N.D. GA March 26, 2014) (gathering authority). The current record does not include affirmative evidence of standing offered by the Defendant. However, the Court does not typically recommend denial of a motion to suppress on this basis without first allowing a movant to perfect the record at or before a hearing with affirmative evidence of standing. Whether to allow that step is moot here, however, because, as explained above, the Defendant's motion does not make a substantial preliminary showing of a *Franks* violation warranting any further hearing.

This matter is ready for trial.

IT IS SO RECOMMENDED this 19th day of January, 2024.

_____
 **JUSTIN S. ANAND**
  **UNITED STATES MAGISTRATE JUDGE**