UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ROYKELL HOLDER, <br><br> Defendant. | CRIMINAL ACTION NO. <br><br> 1:23-CR-0123-SEG-JSA |

### O R D E R

On May 25, 2023, a grand jury returned a superseding indictment charging Roykell Holder with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), and receipt of a firearm while under indictment in violation of 18 U.S.C. § 922(n). (Doc. 1.) Mr. Holder moves to dismiss the indictment on the ground that these criminal firearms prohibitions violate the Second Amendment under the reasoning in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022). (Doc. 29.) He also moves pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to suppress evidence obtained in a search of his mother's apartment on the ground that the attesting officer made untruthful statements in his warrant application and that a truthful affidavit would have failed to establish probable cause necessary to justify the search. (Doc. 30.) The Magistrate Judge recommends that both

motions be denied. (Doc. 55, 56.) Mr. Holder has filed objections to the R&Rs. (Doc. 60, 61.) After careful consideration, the Court enters the following order.

## I. Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de novo review of those portions of the R&R to which Defendant has timely and specifically objected. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667 (1980). For a party's objections to warrant de novo review, he "must clearly advise the district court and pinpoint the specific findings that [he] disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). Those portions of the R&R to which there are no objections will be assessed for clear error only. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) ("[I]ssues upon which no specific objections are raised do not so require de novo review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

## II. Discussion

### A. Motion to Dismiss the Indictment

The Eleventh Circuit has not considered the constitutionality of § 922(n) post-*Bruen*. However, both this Court and the United States District Court for the Southern District of Georgia have found that § 922(n) does not violate the Second Amendment.[1]

The Court has conducted a de novo review and has considered each of Mr. Holder's objections to the R&R. Mr. Holder objects that the R&R misapplied *Bruen* by relying on insufficient historical analogues to conclude that § 922(n) is relevantly similar to historical firearms regulation. The Court does not agree. Section 922(n) reflects "a concern with keeping firearms out of the hands of categories of potentially irresponsible persons." *United States v. Adger*, No. CR 122-102, 2023 WL 3229933, at *2 (S.D. Ga. May 3, 2023), *report and recommendation adopted*, 2023 WL 3627840 (S.D. Ga. May 24, 2023).

---

[1] *See United States v. Fabiano*, No. 2:23-CR-1-RWS, 2024 WL 196480 (N.D. Ga. Jan. 17, 2024); *United States v. Adger*, No. CR 122-102, 2023 WL 3229933 (S.D. Ga. May 3, 2023), *report and recommendation adopted*, No. CR 122-102, 2023 WL 3627840 (S.D. Ga. May 24, 2023); *United States v. Smith*, No. CR 122-081, 2023 WL 3012007 (S.D. Ga. Mar. 29, 2023), *report and recommendation adopted*, No. CR 122-081, 2023 WL 3010178 (S.D. Ga. Apr. 19, 2023); *see also United States v. Yancey*, No. 23-1651, 2024 WL 317636, at *2 (8th Cir. Jan. 29, 2024) (affirming denial of motion to dismiss indictment; finding that defendant "points to no controlling authority holding that 922(n) violates the Second Amendment").

Here, it is alleged that Mr. Holder, knowing that he had been indicted for "Aggravated Assault, Armed Robbery and Exploitation and Intimidation of a Disabled Adult, Elder Person or Resident, on or about January 14, 2021, in Gwinnett County, Georgia, Superior Court, did knowingly receive a firearm . . ." (Doc. 14 at 2.)

As stated in the R&R, there is ample evidence of a historical tradition of disarming groups of persons perceived to be dangerous. By way of additional example, England's Militia Act of 1662 empowered officers of the Crown to disarm persons considered "dangerous to the Peace of the Kingdom." 14 Car. 2, c. 3, § 13 (1662). *Bruen* "recognized that various colonial-era and antebellum laws restricted the rights of 'Affrayers, Rioters, Disturbers, or Breakers of the Peace' to bear arms." *United States v. Childs*, No. 122CR00327LMMLTW1, 2023 WL 6845830, at *4 (N.D. Ga. Oct. 16, 2023) (quoting *Bruen*, 142 S. Ct. at 2142-45, 2150, 2152). Justice Barrett, while on the Seventh Circuit Court of Appeals, wrote that "English and early American restrictions on arms possession" were "animated" by "[c]oncerns about "threatened violence and the risk of public injury." *Kanter v. Barr*, 919 F.3d 437, 451, 456 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ("History is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people

4

from possessing guns.")  Late-18th-century and early 19th-century statutes "prohibit[ed] bearing arms in a way that spread[] 'fear' or 'terror' among the people."  *Bruen*, 142 S. Ct. at 2144-45.  *Bruen* itself refers to the right of "law-abiding, responsible citizens" to use arms for self-defense.  *Bruen*, 142 S. Ct. at 2131.

As per *Bruen's* direction, the Magistrate Judge considered the "comparable burden" and "comparable justification" of § 922(n) in relation to historical regulations, Doc. 55 at 12-13, and his analysis is sound.  *Bruen*, 142 S. Ct. at 2123-33.  Section 922(n) is "relevantly similar" to our nation's historical tradition of disarming groups of persons deemed to pose a threat of violence to others and to the community.  *Id.* at 2132 ("[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue,* not a historical *twin*.  So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.").

The Court further concurs with the R&R's discussion of surety statutes.  In sum, the Magistrate Judge applied the appropriate standard and relied on relevant historical analogues in determining that § 922(n) is consistent with the historical tradition of firearm regulation in this country.

As for the objection relating to 26 U.S.C. § 5861(d), the Magistrate Judge determined that § 5861(d) was constitutional as applied to Mr. Holder because the Second Amendment does not cover his alleged conduct here. *See United States v. Miller*, 307 U.S. 174 (1939). The Magistrate Judge had no need to engage in a lengthy *Bruen* analysis[2] because the Second Amendment does not protect the possession of unregistered, short-barreled rifles, more commonly known as "sawed-off" rifles. *See District of Columbia v. Heller*, 554 U.S. 570, 625 (2008) ("We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right.").[3] The Court finds nothing in Mr. Holder's objections that undermines or weakens the Magistrate Judge's conclusions. The objections are overruled.

---

[2] The Court notes that the R&R does address *Bruen* and historical analogues. (Doc. 55 at 17 n. 7.)

[3] *See also United States v. Wilson*, 979 F.3d 889 (11th Cir. 2020); *United States v. Bachmann*, No. 8:23-cr-304-VMC-CPT, 2024 WL 730489, at *3 (M.D. Fla. Feb. 22, 2024); *United States v. Jones*, No. 1:23-cr-126-TFM, 2023 WL 8374409, at *5-6 (S.D. Ala. Dec. 3, 2023); *United States v. Holton*, 6396 F. Supp. 3d 704, 709 (N. D. Tex. 2022).

**B. Motion to Suppress Evidence Pursuant to *Franks v. Delaware***

Mr. Holder argues that he has made a substantial preliminary showing that the affidavit in support of the search warrant omitted material facts and contained untruthful statements. He seeks a *Franks* hearing. The affidavit states as follows:

> On 01/06/2023 at approximately 1648 hours, the Dunwoody Police Department was dispatched to 4400 Ashford Dunwoody Rd, Dunwoody, GA 30346, Perimeter Mall, in reference to a shots fired call. Once on scene uniform patrol officers started to enter the building and were directed by people fleeing to the incident location.
>
> Uniform Patrol Officers located a black male on the floor with a gunshot to the right side. While officers were attending to the victim another officer went to mall security office to view surveillance footage. The officer was able to get a description of the suspects and pass it along to other officers. Surveillance video was able to provide footage of the incident and of the suspects getting in a vehicle and leaving the scene.
>
> When checking the license plate readers in the area officers were able to obtain a tag for the suspect vehicle. As the vehicle tag and description was being sent out to responding units, Dunwoody PD was advised that Dekalb PD and Fire were responding to a person shot call. The address, 319 Pleasantdale Crossing, they were responding to matched the listed address on the suspect vehicle registration.
>
> Once officers arrived on scene at the 319 Pleasantdale Crossing they located a black male with a gunshot wound to his hand. The suspect vehicle was also located in the parking lot near the suspects apartment. The suspects mother advised that her son had been shot at the mall. Officers on scene had a picture of the

suspect and the person shot in the hand matched the suspect picture.

(Doc. 30-1 at 1-2.) Defendant's *Franks* motion relies on facts ascertained from (1) surveillance video of the shooting, and (2) body camera footage from officers on the scene at 319 Pleasantdale Crossing.

Mr. Holder raises several objections to the R&R. First, he argues that the warrant application mischaracterized the circumstances of the shooting and left out important facts that suggested Mr. Holder engaged in self-defense. This argument was presented to the Magistrate Judge who fully and cogently addressed it in the R&R, complete with a frame-by-frame description of the surveillance footage. The undersigned, like the Magistrate Judge, "cannot conclude that a more complete description of this footage . . . would have vitiated probable cause to issue the warrant." (Doc. 56 at 11.)

Mr. Holder further argues that the attesting officer listed items in the warrant application that the officer knew were not likely to be in the home subject to search. The argument is based in part on a responding officer's comment that the gun used in the mall shooting was likely in the car near the apartment or disposed of in flight. But the fact that an officer voiced these possibilities at one point in a fast-moving investigation does not plausibly lead to the conclusion that officers misled or withheld information from the state-

8

court judge. Nothing in the officer's comment equates to a commitment to the notion that the gun *was* in fact elsewhere. And there is a sufficient nexus between the apartment and the evidence listed in the warrant application. The suspect vehicle identified on the mall surveillance footage was found in the parking lot near the apartment. A check of the license plate returned a registration address of 319 Pleasantdale Crossing. Emergency responders were present at the location, having received a call of a person shot, and Mr. Holder's mother told responders that her son was shot at the mall. The suspect's picture from mall surveillance footage matched the person shot in the hand and located at 319 Pleasantdale Crossing. The fact that Mr. Holder did not reside at the apartment with his mother does not obviate the nexus.

Next, Mr. Holder objects that the R&R "gives insufficient weight" to the "true motive of the search," which allegedly was to seek evidence for an ATF investigation. In support of this argument, Mr. Holder states that (1) emergency responders spoke to Mr. Holder about the circumstances of his injuries; (2) officers led Mr. Holder to an ambulance; (3) an officer then received a call informing him that Mr. Holder was the subject of an ATF investigation. The warrant and search ensued. The argument is that law enforcement officials "were not going to get a warrant at all until they learned that there was an unrelated ATF investigation." (Doc. 61 at 10.)

9

The undersigned respectfully disagrees that the cited evidence amounts to a substantial preliminary showing that the motivation for the search warrant was other than that set forth in the affidavit. The full factual context belies this claim. Following the mall shooting, an officer viewed surveillance video and obtained a description of the suspects. Surveillance video showed the suspects getting into a car and leaving the scene. Officers obtained the tag information for the vehicle and connected its registration to an address where Mr. Holder was found present with a gunshot wound. When considered in full, the facts do not raise a plausible inference – much less a substantial showing – that the ATF investigation was the "clear motive" for seeking the warrant. Neither do they show that officers were not going to get a warrant but altered course when they learned of the alleged ATF investigation.

Mr. Holder has not made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155-56. The Court agrees with the Magistrate Judge's conclusions. Mr. Holder's objections to the R&R are overruled.

### III. Trial

Trial is set to begin on April 30, 2024, at 9:30 AM in Courtroom 2307. The pretrial conference will be held on April 25, 2024, at 1:30 PM in Courtroom 2307. Mr. Holder is required to attend the pretrial conference or present a written waiver of his attendance. By April 11, 2024, the parties are to file any motions in limine and proposed voir dire questions. By April 11, 2024, the Government shall file a summary of the indictment for use at voir dire. By April 18, 2024, the parties are to file any objections to those items listed above.

Excludable time is allowed through April 30, 2024, pursuant to 18 U.S.C. § 3161(h)(7)(A) and (B)(iv), to give counsel for Defendant and the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. The Court finds that the ends of justice served outweigh the best interest of the public and Defendant in a speedy trial and are consistent with both the best interest of the public and individual justice in this matter.[4]

---

[4] Mr. Holder has not perfected his appeal of the denial of his bond motion (Doc. 50) so that matter is not ripe for consideration and is deemed abandoned. Should Mr. Holder wish to pursue his appeal, he may renew it prior to trial.

## IV. Conclusion

For the reasons explained above, the Court OVERRULES Mr. Holder's objections (Doc. 60, 61) and ADOPTS the Magistrate Judge's R&Rs (Doc. 55, 56). Mr. Holder's motions to dismiss the indictment (Doc. 29) and to suppress evidence (Doc. 30) are DENIED.

**SO ORDERED** this 9th day of March, 2024.

SARAH E. GERAGHTY
United States District Judge